[No. 14177. Department One. January 12, 1918.]

CASCADE LUMBER & SHINGLE COMPANY, *Appellant*, v.
GEORGE P. WRIGHT *et al.*, *Respondents*.[1]

COUNTIES — CONTRACTS — CONTRACTOR'S BOND—LIABILITY. Actual knowledge on the part of the contractor on county work that materials are being furnished does not dispense with the necessity of notice under Rem. Code, § 1159-1, requiring notice not less than ten days after the first delivery of materials as a prerequisite to a claim or action against the contractor and his bond to secure laborers and materialmen.

SAME — CONTRACTOR'S BOND — NOTICE—TIME FOR GIVING. Under such statute, a notice given after commencing to furnish lumber is sufficient to bind the contractor as to all deliveries subsequent to the notice, when they were not made under a specific contract for a fixed quantity at a given price, but were made on orders given from time to time as the lumber was needed after the manner of a running account.

ACTIONS—JOINDER OF CAUSES — COUNTIES — CONTRACTORS—BONDS. It is proper to unite causes of action against a contractor on county work and his bondsman and a subcontractor, for materials purchased by the contractor which the subcontractor assumed and agreed to pay, and for materials furnished to the subcontractor under his agreement to pay for the same, in view of the statute making the contractor and his bondsmen responsible for performance of the contract.

PLEADING—AMENDMENTS TO CONFORM TO PROOF. Upon failure to object to a complaint on the ground that it failed to separately state causes of action that could be united, it will be deemed amended to conform to the proof, under Rem. Code, § 1752.

EQUITY—MAXIMS. A shortage of $3.85 in a judgment is of such trifling import as to fall within the maxim, *"De minimis non curat lex."*

[1] Reported in 169 Pac. 833.

Appeal by plaintiff from a judgment of the superior court for Snohomish county, Alston, J., entered December 20, 1916, upon findings favorable to the plaintiff, in an action on a contractor's bond, tried to the court. Reversed.

*J. A. Coleman* and *James M. Hogan*, for appellant.
*Fletcher & Evans* and *C. B. White*, for respondents.

FULLERTON, J.—This is an action to recover the value of certain material sold by the appellant in part to the respondent Wright, and in part to the defendant Snyder. The case is before us upon the pleadings, findings of fact, conclusions of law, and the judgment entered by the trial court, the evidence not being in the record. From the findings it appears that the respondent Wright entered into a contract with Snohomish county for the construction of a drainage improvement, and executed the statutory bond with the respondent National Surety Company, as surety, for the protection of materialmen and laborers contributing to the work. The further facts, stated in the language of the findings, are the following:

"(4) That on the 16th day of August, 1915, said Geo. P. Wright sublet by written contract approved by the county commissioners, a part of said work to defendant J. B. Snyder, and said Snyder entered upon the performance of said subcontract. That shortly prior to said subletting, the plaintiff agreed to sell and deliver, and defendant George P. Wright agreed to receive, certain piling of the value of $168 for use in that part of the work subsequently covered by said subcontract. That said piling was thereafter delivered and was actually used by said Snyder in the performance of his said subcontract and became a part of the work performed thereunder. That at the time said Wright entered into said subcontract with said Snyder, said Snyder agreed to assume said obligation from Wright to the plaintiff and to accept and use said piles and pay therefor.

"(5) That the said defendant Snyder, while performing his said subcontract, purchased of the plaintiff lumber for use in the performance of the same, and the plaintiff com-

menced to deliver to said Snyder said lumber on the 30th day of August, 1915, and almost daily thereafter continued to deliver the same until the 6th day of December, 1915. That the fair and reasonable value of all of the same was and is the sum of $808.15. That of said deliveries there was delivered between August 30, 1915, and prior to September 18, 1915, material amounting to $171.85, in addition to said piles amounting to $168. That the balance of said lumber was delivered to said Snyder subsequent to said date. That the plaintiff carried all of said account for lumber and piling as an account against said J. B. Snyder. That thereafter, to wit, on October 27, 1915, said Snyder paid plaintiff on account of his liability the sum of $168.00, without, however, designating how the payment was to be applied, and that the plaintiff, upon receiving the same, applied it to the first items of lumber charges.

"(6) That, on the 18th day of September, 1915, the plaintiff mailed to defendant, George P. Wright, at his proper post office address with postage prepaid, a notice in writing stating in substance and effect that it had commenced to deliver materials to J. B. Snyder for use upon the work provided for in said contract and subcontract, with the name of the defendant, J. B. Snyder, as the person who ordered and to whom the same was being furnished, and that said George P. Wright and his bond would be held for payment of the same.

"(7) That within thirty (30) days from and after the completion of said contract with an acceptance of the work therein described by said county commissioners, the plaintiff presented to and filed with said board of county commissioners a notice in writing, directed to said county, and reciting that the plaintiff has a claim in the sum of eight hundred, eight and 15-100 dollars· ($808.15) against the bond given by the defendant George P. Wright, as principal, and the defendant National Surety Company, as surety, for materials furnished as aforesaid, and that the said notice was signed by the secretary of the plaintiff, and was presented and filed as aforesaid on January 15, 1916.

"(8) That the sum of fifty dollars ($50) is a reasonable sum to be allowed the plaintiff as attorney's fee in this action."

As conclusions of law from the foregoing facts, the court found that the appellant was entitled to recover from the respondents, Wright and National Surety Company, the sum of $168 and interest, the value of the piles furnished; from the defendant Snyder, the sum of $640.15 with interest, the value of the lumber furnished; and from all of the defendants the costs and disbursements of the action, including the attorney's fee. This appeal is from the judgment entered in accordance with the findings and conclusions.

The appellant first complains that the trial court refused to permit it to show that the respondent Wright had actual knowledge at all times of the fact that lumber was being furnished to the respondent Snyder and by him used in the performance of the contract work. But, as will hereafter appear, the statute requires written notice, and the rule is uniform that, where such is the requirement of the statute, other forms of notice will not avail. The evidence was, therefore, not competent to prove any material issue presented by the pleadings.

The second assignment is that the court erred in its conclusions of law and judgment, in that they do not follow from the facts as found. To an understanding of this assignment, a short review of the statute is necessary. Section 1159 of the code (Rem.) provides that, whenever any board acting for a county shall contract with any person to do any work for such county, such board shall require the person with whom the contract is made to make, execute and deliver to such board a good and sufficient bond with two or more sureties, or with a surety company as surety, conditioned, among other things, that the contractor shall faithfully perform the conditions of the contract and pay all material-men who shall furnish material and supplies for carrying on the work, giving to such materialmen a right of action upon the bond for all material furnished, whether it be furnished to the contractor himself or to a subcontractor. A subsequent section (Id., § 1161) provides for notice to the board

letting the contract, and a still further section (§ 1,159-1) for a notice to the contractor when the materials have been furnished to a subcontractor. The latter section omitting provisions not material here, reads as follows:

"Every person . . . furnishing materials, . . . to be used in the construction . . . of any work for . . . any county, . . . shall, not later than ten days after the date of the first delivery of such materials . . . to any subcontractor . . ., deliver or mail to the contractor a notice in writing stating in substance and effect that such person, . . . has commenced to deliver materials, . . . for use thereon, with the name of the subcontractor, . . . and that such contractor and his bond will be held for the payment of the same, and no suit or action shall be maintained in any court against the contractor or his bond to recover for such materials, . . ., or any part thereof unless the provisions of this act have been complied with."

Under these statutes, therefore, a materialman who furnishes material to a subcontractor to be used in the construction of an improvement of the character therein indicated has a right of action against the original contractor and his bondsmen for the material so furnished, provided he gives the notices as therein required. From the findings of fact it is made clear that the notice to the county board was sufficient to comply with the terms of the statute, and that the one to the contractor was sufficient if timely given. It was the opinion of the trial court that the latter notice was not given in time to make it effective for any purpose, and, for this reason, it did not allow a recovery against the contractor and his bondsmen for the material delivered to the subcontractor. Whether it correctly so ruled or not is the question submitted on this branch of the case.

Referring again to the findings of fact, it will be seen that appellant commenced to furnish lumber to the subcontractor on August 30, 1915, and between that date and September 18, 1915, furnished to him lumber of the value of $171.85, that it then served upon the contractor the statutory notice,

and subsequent to that time and by December 6, 1915, furnished to him additional lumber to the value of $636.30. While it is found that deliveries were made almost daily throughout the times named, it is not found, nor was it alleged in the complaint, that the deliveries were made under a specific contract for a fixed quantity at a given price; on the contrary, the inference from the record is that the deliveries were made on orders from the purchaser given from time to time as the lumber was needed by him, after the manner of an ordinary running account.

These being the facts, there would seem to be little reason for saying that the notice was not effective to bind the contractor for all lumber delivered subsequent to the time it was given. The requirement that notice be given can have but one purpose: It is to enable the original contractor to protect himself against the obligations of the subcontractor, so that he may not be compelled to pay twice for the same material. This purpose is as well accomplished for material delivered subsequent to the notice, by a notice served more than ten days after the commencement of the delivery, as it would be by a notice served within the ten days. The statute is remedial and should be given a construction that will effect its purpose. It is easy to see that the rule adopted by the trial court might, in some instances, deny to the materialman the benefit of the statute. Let us suppose, for example, that the subcontractor had paid for all of the material as it was delivered up to the time of the giving of the notice, and then asked for a credit delivery. If notice at that time would be too late, it is clear that the materialman would have to deny the credit or furnish it on the credit of the subcontractor alone.

Again, let us suppose that the materialman, after furnishing material on credit up to a given amount, had then refused further delivery and the subcontractor had procured the material from another, no one would contend that that other could not bind the contractor and his bondsmen by giving

the statutory notice. Wherein then is there any substantial reason for holding that the same materialmen may not bind the contractor for subsequent deliveries by giving the notice? We can perceive of none, other than a technical, narrow construction of the statute contrary to its spirit and purpose.

The respondents cited the cases of *Finlay v. Tagholm*, 62 Wash. 341, 113 Pac. 1083; *Seattle Lumber Co. v. Richardson & Elmer Co.*, 66 Wash. 671, 120 Pac. 517, and *Robinson Mfg. Co. v. Bradley*, 71 Wash. 611, 129 Pac. 382, as supporting the conclusion of the trial court. But these cases are not in point. They were decided under a statute requiring the materialman, who desired to bind the owner of property for the material delivered, to deliver or mail to the owner of the property a duplicate statement of the materials delivered at the time of the delivery. It was held that the failure to furnish the statement exonerated the owner from liability. We have no doubt that these cases were rightly decided; but we cannot think they have any application to the question presented here.

The question is one of first impression in this court, but we are not without authority from other jurisdictions. In *Quaack v. Schmid*, 131 Ind. 185, 30 N. E. 514, the materialman had a contract with a contractor of a church building to furnish him with certain brick. After delivering a part of the brick, he served notice on the owner that he was furnishing the material for the contractor. The statute provided that persons furnishing material to a contractor must, to acquire a lien on the structure for which the materials were furnished, "at or before the time he furnishes the material . . . notify the owner or his agent that he is furnishing the materials . . . for the contractor." Afterwards he perfected his lien and sought to enforce it against the church property. It was held that the lien would be enforced for the brick delivered subsequent to the notice. To the same effect is *Hubbard v. Moore*, 132 Ind. 178, 31 N. E. 534. There is perhaps a conflict of authority on the ques-

tion, but for the reasons stated, we prefer the rule of the Indiana cases.

The respondents argue that the judgment must be affirmed independently of the question whether a recovery can be had against the contractor and his bondsmen for the material delivered subsequent to the giving of the notice. The record discloses that the respondents demurred to the complaint on the ground that two or more causes of action had been improperly united. This demurrer, the trial court overruled. Whereupon the respondents answered, and the court proceeded to a trial upon the merits. The respondents now urge that "the judgment was right for the reason that the plaintiff, under the state of the pleadings, could only recover upon one cause of action," and that the plaintiff has had such a recovery. But, without following the argument by which this result is sought to be sustained, we cannot concur in the premise upon which it is founded. In our opinion, the causes of action were not improperly united. The respondent Wright is liable upon the cause of action for the sale of the piles because they were ordered by and not paid for by him or by any one; and he is liable upon the cause of action for the material delivered to the defendant Snyder because of the statute and the notices given pursuant to the statute. The respondent Snyder is liable upon the cause of action for the piles because he assumed the obligation, and is liable for the material furnished him because he ordered it and assumed and agreed to pay for it. The bondsman is liable because, by the terms of its bond, it agreed to answer for the miscarriage of Wright. The cause of action thus arose out of contracts express or implied, and ran against all of the defendants named in the complaint. Under the statute (Rem. Code, § 296) they were properly united in one complaint. The causes of action, however, were not separately stated, and possibly the complaint was subject to objection on this ground, but no such objection was made in the court below, and, being an amendable defect, cannot be urged for the

first time in this court, especially, in view of the statute which requires this court to consider all amendments which could have been made as made. Rem. Code, § 1752.

From the findings it will be observed that the payments made by Snyder to the appellant fell short by $3.85 of satisfying the account for material sold and delivered by appellant to Snyder prior to the time notice of delivery was served upon the appellant Wright. It will be noticed also that, while the court found that deliveries of materials were made almost daily, there is no specific finding as to the quantity or value of the materials delivered within the ten days next preceding the service of the notice on Wright. It can be questioned, therefore, whether this item falls within the notice, and since the respondents are holden on the second part of the account because of the notice, they should not be held for this balance for want of certainty in the proofs. The judgment entered must, for this reason, be recast, and a judgment entered against all of the defendants for the value of the piles delivered to Wright, and for the value of the materials delivered to Snyder subsequent to the service of the notice.

If it be objected that this conclusion shows that the causes of action do not affect all of the parties to the action and is a misjoinder under § 296 of the code, the answer is that the respondents are in no manner injured by it, and that the matter is of such trifling import as not to justify the burden and expense of further litigation. "*De minimis non curat lex.*"

The judgment is reversed, and the cause remanded with instructions to enter a judgment in accordance with this opinion.

Ellis, C. J., Webster, Main, and Parker, JJ., concur.