MAEDER STEEL PRODUCTS COMPANY, *Respondent*, v. J. M. BREWSTER *et al.*, *Appellants*.

LONGVIEW CONCRETE PIPE COMPANY, *Respondent*, v. J. M. BREWSTER *et al.*, *Appellants*.

BROOKFIELD QUARRY & TOWAGE COMPANY, *Respondent*, v. J. M. BREWSTER *et al.*, *Appellants*.[1]

[1]Reported in 281 Pac. 14.

*Nelson R. Anderson,* for appellants.
*H. P. Troy* and *Troy & Yantis,* for respondent.

MILLARD, J.—The work covered by a contract between J. M. Brewster and the state for clearing, grading and construction of a certain state road was completed in September, 1926, and accepted by the state. The Fidelity & Casualty Company of New York was the surety upon the contractor's bond to the state. Brewster entered into several subcontracts, one of which was with B. G. Henley, for the construction of a portion of the road. A copy of the subcontract with Henley was filed with the state resident engineer, who notified the district engineer of such filing. A copy of the subcontract was not, however, filed with the state highway engineer at Olympia. Brewster was advised by the resident engineer at South Bend, in a letter dated February 18, 1926, that the subcontractor would not be recognized:

"Received your copy of the subcontract with B. G. Henley. As before stated, the state highway department does not recognize any subcontractor and will expect the work to be carried on as specified by your contract. If, at any time, we find that the work is not being done satisfactorily, you will be expected to terminate the subcontract and complete the work yourself."

Henley contracted with Maeder Steel Products Company for steel; with the Longview Concrete Pipe Company for culvert pipe, gravel and cement; and with the Brookfield Quarry & Towage Company for transportation of gravel. The three companies named instituted actions against the contractor, the bond and the reserved fund held by the state. The causes were tried to the court without a jury, resulting in judgments in favor of the claimants. Brewster and his surety have appealed from the three judgments, which, by stipulation, have been consolidated for the purpose of this appeal.

Appellants argue that the Maeder Steel Products Company is not entitled to recover because of failure to give to the principal contractor the ten days' notice required by Rem. Comp. Stat., § 1159-1.

The contract between the principal contractor and the state provides that,

"The contractor shall not let, assign, or transfer this contract, or any interest therein or any part thereof, without the consent, in writing, of the state highway engineer. The contractor shall give personal attention to the work at all times, and shall be present, either in person or by duly authorized representative, on the site of the work continually during its progress, and shall receive instructions from the state highway engineer. Any subcontractor shall be considered the agent of the contractor, and the latter shall be responsible for any indebtedness incurred by such agent. If any subcontractor fails to perform his work in a satis-

factory manner, his subcontract may be terminated by the state highway engineer.''

The trial court held it was unnecessary for the claimant to give to the principal contractor notice of the furnishing of the steel in view of the foregoing provision of the contract; that the purported subcontract with Henley did not become a subcontract, as it was not consented to in writing by the state highway engineer, and that Henley was the agent of Brewster for the purpose of contracting for the purchase of the steel that went into the road.

In *Cascade Construction Co. v. Snohomish County,* 105 Wash. 484, 178 Pac. 470, it is stated:

''The provision in the original contract that the contractor shall not let, assign, or sublet the work provided to be done, or any part thereof, without the consent of the board, and that the contractor shall file with the board a duplicate of all contracts made by him as aforesaid, was for the protection not only of the board itself, but of all persons who furnished supplies, material and provisions for the work to be done; and since that contract was not filed with the board as the original contract required, it gives no notice to persons furnishing material or supplies that they were not furnishing such supplies for the original contractor, whose contract was on file. When the original contractor fails to file his subcontract he thereby waives the right to the notice required by Rem. Code, § 1159-1.''

We held in the recent case of *Rachow v. Philbrick & Nicholson,* 148 Wash. 214, 268 Pac. 876, that, where a subcontract was entered into with the principal contractor without the consent of the state, such subcontractor was the agent of the principal contractor and the principal contractor would be responsible for any indebtedness contracted by such agent. In that case, Judge Tolman, speaking for the court, said:

"A provision in a contract, such as we have here, is not made for the protection of the state alone, but also for the protection of those furnishing material. The state has an interest in seeing that the material going into its work is paid for; that its citizens are not deprived of their just dues, and that no causes for dissatisfaction and litigation shall arise to the embarrassment or loss of any concerned in completing the work."

Henley was not recognized by the state as a subcontractor. The resident engineer treated him as an agent or representative of the principal contractor. True, Brewster filed with the resident engineer a copy of his subcontract with Henley, but no copy was filed with the state highway engineer, nor did the state highway engineer ever consent to the making of such subcontract. Brewster was positively and clearly informed that the state highway department would "not recognize any subcontractor." Manifestly Henley acted solely in the capacity of agent for Brewster, the principal contractor; therefore, Brewster is responsible for any indebtedness contracted by Henley in the purchase of steel for road construction; and the trial court correctly held that notice to the principal contractor was not essential to the establishing of respondent's claim.

We are convinced by our examination of the evidence brought here in the statement of facts that the respondent made a good faith delivery to Henley, at Deep River, of steel on the order of Henley, and that the steel was used in the construction of the road. Respondent cut and bent, according to specifications prepared by the state resident engineer, twenty thousand pounds of reinforcing steel. That steel was shipped by steamer from Portland, consigned to B. G. Henley, Deep River, Washington, a point one and one-half miles from the nearest point on the state road under construction by Henley for Brewster. The bills

of lading disclose delivery to the carrier at Portland. There is not the slightest intimation of fraud between the respondent and the contractor's agent, Henley. There is evidence that the steel was used in the construction of the road. Brewster, while denying that all of the steel was used, admits in his letter of June 23, 1926, to the respondent, that the steel was shipped to, and received by, Henley:

"The steel that you shipped Mr. Henley has not been used with the exception of a very small portion. I am giving Henley every opportunity and all the assistance possible in order that he can finish his contract, and pay his bills. I do not know how much steel you sold him, but I am requesting my time-keeper to see Mr. Henley and ascertain the amount of steel he has remaining on the work."

Appellants insist that the respondent failed to prove the reasonable value of the steel claimed to have been furnished. The finding of the trial court that Henley, at the place of business of the respondent, ordered the steel of respondent, and that respondent and Henley agreed on a value of the steel in the sum of $681.46, and that the steel was of the reasonable value of $681.46, is justified by the evidence.

Respondent's president testified that Henley personally called at the respondent's Portland office and ordered the steel:

"Q. Mr. Maeder, this order, who obtained or gave you the order? A. B. G. Henley. Q. Where were you when the order was given? A. In my office in Portland, Oregon."

Respondent's president personally made the invoice for the steel, from which it appears that twenty thousand and forty-two pounds were, on verbal order of Henley, at the agreed price of three dollars and forty cents per hundred-weight, shipped by steamer to Henley. The president testified that $681.46 was the

amount of his company's bill. The agreed price was some evidence of value and, in the absence of anything to the contrary, sufficient.

Next, complaining of the judgment in favor of the Longview Concrete Pipe Company, appellants contend that the respondent should have been charged with $514.25, the cost of placing collars on certain pipe; that appellants should have been given full credit of $447.12 for five hundred and eleven sacks of cement returned; and that appellants should not have been held liable in the amount of $564 for gravel that was dirty and unfit for use.

The plans and specifications of the state provided for bell and spigot pipe, or if tongue and groove pipe were used, cement collars would be put on the joints. Brewster testified that he informed respondent that tongue and groove pipe would not be used under any circumstances; that he would not be put to the expense of putting on collars. Brewster later notified respondent that a subcontract had been entered into with Henley. There is evidence that Henley did not want bell and spigot pipe because it was too expensive to handle on the job, therefore he contracted with respondent for tongue and groove pipe. Subsequent to the installation, the contractor was required by the state inspector to put collars on the pipe at a cost to the contractor of $514.25.

At most it may be said that Henley's judgment was not good. There is not a suggestion that his or respondent's purpose was to defraud Brewster. As Brewster's agent, Henley purchased a type of pipe not in accordance with the specifications. That mistake of judgment, when discovered by the inspector, cost the principal contractor $514.25 to correct. That expense resulted from an error of Brewster's agent, therefore the responsibility is Brewster's.

■ Respondent Longview Concrete Pipe Company shipped to Brewster five hundred and eleven sacks of cement on a barge from Longview to Deep River during a storm. That some of the sacks of cement were wet, is not disputed. Whether that dampness was acquired in transit or subsequent to arrival at Deep River, is in dispute. Respondent claims that the cement was unloaded and delivered to Henley at Deep River. Be that as it may, the cement was taken back to Longview and accepted by the respondent. Brewster was credited with $410.38 on four hundred and sixty-nine sacks returned; however, he was debited with forty-two sacks of damaged cement and $69.15 for original loading and unloading of the five hundred and eleven sacks of cement, or a net credit of $341.23 for cement returned. Appellants are entitled to a credit of $447.12 for the five hundred and eleven sacks of cement returned. The cement did not go into the construction, neither was it delivered on the job.

■ The Longview Concrete Pipe Company shipped, by barge, to Henley two hundred and forty yards of gravel, which was delivered near Deep River close to the road under construction. A day or so subsequent to delivery, the gravel was examined by a state inspector, who testified that the gravel was so coated with dirt that the cement would not bind. The resident engineer refused to accept the gravel until it was washed. Appellants contend that the cost of washing exceeded the price of the gravel, and that the principal contractor is entitled to a credit in that amount. While Brewster testified that he personally knew the gravel was dirty, yet there is no evidence in the record that either he or his agent Henley ever mentioned the matter to the respondent. Further, there is evidence that would warrant the trial court in finding that the gravel was clean when delivered, and that it subsequently

became dirty, therefore the judgment as to this item will not be disturbed.

■ The Brookfield Quarry & Towage Company operates a dredge. At the request of Henley, that company towed to, and unloaded at, Naselle Landing, near the road under construction, one barge of gravel. Appellants contend that the respondent is a common carrier and has no lienable claim. That question is foreclosed by *Nemah River Towboat Co. v. Brewster,* 152 Wash 672, 278 Pac. 694, 279 Pac. 1107, in which we held that such a claim as respondent's is properly chargeable against the bond of the contractor.

■ Appellants next contend that the claim of the Brookfield Quarry & Towage Company is excessive. The gravel transported by respondent came from Steilacoom to Raymond, and was taken by barge from Raymond to Naselle Landing by the Nemah Towboat Company. The towboat company charged the respondent seventy dollars for towing the gravel from Raymond to Naselle, which charge is included in respondent's claim for $241 for services rendered. The claim itemized is, $162.50 for two and one-half days (twenty hours); $70 for towing dredge; $8.50 for ferry charges for messenger across the Columbia and for service of messenger. The item of $8.50 was disallowed and judgment was entered for $232.50, and an attorney's fee of.$75.

While the price seems high, there is evidence that the charges were the fair and reasonable value customarily charged; that the contractor no doubt understood that the charge was sixty-five dollars a day of eight hours, and that the contractor was to pay the towage charge. Respondent's vice-president testified:

"I told him he would have to pay the towing both ways, and told him the price of the dredge was $65

a day straight time until we got back to Ilwaco where we were working. . . . It took two and one-half days.''

The evidence amply supports the judgment.

The other questions presented by appellants in the three cases have been considered, and we find them to be without substantial merit.

The judgment in favor of the Maeder Steel Products Company is affirmed. The judgment in favor of the Longview Concrete Pipe Company is modified, appellants to receive a credit of $447.12 instead of $341.23, for cement returned. The judgment in favor of the Brookfield Quarry & Towage Company is affirmed.

PARKER, TOLMAN, MAIN, and FRENCH, JJ., concur.