[No. 30914. Department One. June 30, 1949.]

UNION OIL COMPANY OF CALIFORNIA, *Respondent,* v. PAUL TURNER *et al., Defendants,* WALTER BERNDT *et al., Appellants.*[1]

*Walter V. Swanson* and *Douglas A. Wilson,* for appellants.

*G. E. Clark,* for respondent.

JEFFERS, C. J.—This action was instituted by Union Oil Company of California, a corporation, against Paul Turner, Walter Berndt, Yakima county, a municipal corporation, and United States Fidelity and Guaranty Company, a Maryland corporation, in the superior court for Yakima county, to recover the sum of $1,129.49, alleged to be the reasonable and agreed value of goods, wares, and merchandise furnished to defendant Paul Turner.

[1]Reported in 207 P. (2d) 733.

The basis for plaintiff's claim, as shown by the allegations of its complaint, is that defendant Walter Berndt, being a successful bidder, was awarded a contract with Yakima county for furnishing labor and material for a road surfacing job known as county road project No. 129. It is alleged in the complaint that between July 13, 1946, and November 1, 1946, plaintiff, at the solicitation and request of defendant Berndt, acting through his agent, defendant Paul Turner, furnished the goods hereinbefore referred to.

A contract between defendant Walter Berndt and Yakima county was duly entered into on June 28, 1946, for furnishing the material and doing the work necessary to be done under such contract. Defendant Berndt duly filed a performance bond, upon which defendant United States Fidelity and Guaranty Company was surety.

It is further alleged in the complaint that defendant Yakima county retained a sum equal to fifteen per cent of the amount earned by Walter Berndt in the performance of the road job, or $4,234.80; that plaintiff, within a period of thirty days following the final acceptance of the work under the road contract, duly filed its claim of lien against this reserve fund.

Plaintiff asked for judgment against the above named defendants, and each of them, in the sum of $1,129.49, together with interest thereon from January 1, 1947, until paid, the sum of two hundred fifty dollars attorney's fee, and its costs and disbursements. It further prayed that such judgment be decreed to be a first lien upon the trust fund retained by defendant Yakima county, and that the lien be foreclosed and a decree entered directing Yakima county to pay plaintiff the amount of the judgment, together with interest, attorney's fees, and costs.

Yakima county answered the complaint, admitting that it entered into a contract with Walter Berndt, as alleged in the complaint, and that the work was completed by Berndt on or about May 5, 1947, and accepted by the county commissioners of Yakima county on May 9, 1947. It admitted that it has retained from the amount due Berndt the sum of

$4,234.80, and admitted that a notice of lien has been filed by plaintiff in the office of the county auditor of Yakima county.

Defendants Walter Berndt and United States Fidelity and Guaranty Company answered the complaint, and by their answer denied all of the allegations of the complaint, except the allegation relative to Walter Berndt having entered into a contract with Yakima county, as alleged in the complaint, and that Yakima county is a municipal corporation.

The matter thereafter came on for hearing before the court on April 23, 1948, and after testimony taken, the court made and entered findings of fact, conclusions of law, and judgment favorable to plaintiff. By the judgment entered, it was decreed that plaintiff have and recover judgment from the defendants as follows: From defendant Paul Turner the sum of $1,129.49; from defendant Walter Berndt the sum of $1,153.73; from defendant United States Fidelity and Guaranty Company the sum of $1,153.73; and from defendant Yakima county the sum of $1,153.73, which sum the county auditor was directed to pay plaintiff from the retained percentage on the Walter Berndt road project No. 129. The judgment further provided that plaintiff was entitled to recover from defendants Turner, Berndt, and the Guaranty Co. for its costs and disbursements taxed at $42.70.

No appeal from this judgment was taken by either Turner or Yakima county. Walter Berndt and United States Fidelity and Guaranty Company have appealed from the judgment entered.

While there are some five assignments of error made by appellants, we are of the opinion that, based upon admissions made by counsel for appellants at the time of their argument before this court and the briefs submitted, the principal and controlling question to be decided is whether or not defendant Paul Turner was a subcontractor and agent of Walter Berndt. It was admitted by counsel for appellants that if the court should find he was a subcontractor, then respondent Union Oil Company is entitled to recover as

claimed in its complaint. In other words, appellants made no contention before this court that the supplies furnished by respondent to Paul Turner were not so furnished for the purpose of enabling him to crush rock which went upon county road project No. 129. It is admitted also that respondent filed its claim of lien against the reserve fund within thirty days following the final acceptance of the work by the county.

Appellants' contention is that Turner was a mere materialman, and that one who furnishes material and supplies to a mere materialman is not protected by the lien statutes; that the bond executed by Berndt with his surety was a statutory bond, and imposed a liability no greater than the liability of the contractor; and that therefore respondent Union Oil Company has no right of action against appellant Berndt or his surety, United States Fidelity and Guaranty Company, or the reserve fund. To sustain their contentions, appellants cite *Baker v. Yakima Valley Canal Co.*, 77 Wash. 70, 137 Pac. 342; *Neary v. Puget Sound Engineering Co.*, 114 Wash. 1, 194 Pac. 830; and *Northwest Roads Co. v. Clyde Equipment Co.*, 79 F. (2d) 771.

We are of the opinion that there is no real dispute relative to the facts necessary to a decision of the controlling question raised in this case.

The trial court made and entered a very comprehensive memorandum opinion, which is a part of the statement of facts, and we quote from that opinion:

"On June 28, 1946 the defendant Walter Berndt entered into a written contract with Yakima County (Plaintiff's Exhibit 4) to perform a certain road surfacing job on a county highway therein described.

"In accordance with the requirements of Rem. Rev. Stat. Section 1159, the said Berndt furnished a bond with the defendant United States Fidelity and Guaranty Company as surety, conditioned

" ' — that if said principal shall well and truly and faithfully comply with all the terms, conditions and stipulations in said contract and specifications, and shall pay all laborers, mechanics, sub-contractors and materialmen, and all persons who shall supply such person or persons of sub-con-

tractors with provisions and supplies for the carrying on of such work, — then this obligation to be void; otherwise to remain in full force and effect.'

"The bond also provided that the contract between Walter Berndt and Yakima County

" ' — and the specifications required therein are hereby referred to and made a part hereof as fully as though set forth at length herein —' (Plaintiff's Exhibit 4)

"The contract contained provisions that

" 'The Standard Specifications of the Department of Highways of the State of Washington of 1941, and amendments thereto which have been adopted by the Board of County Commissioners of Yakima County as the County's specifications will govern the work to be done except as they are altered or modified by the following provisions:' and

" 'Where, the words "State" and/or "Director of Highways" appear in the Standard Specifications and it is apparent that the County or County Road Engineer would be the agents' functioning in this contract the words County and County Road Engineer shall be substituted respectively therefor.'

"The 1941 Standard Specifications of the State Department of Highways has been introduced as Plaintiff's Exhibit 5.

"After obtaining such road contract, the defendant Berndt entered into an oral agreement with the defendant Paul Turner whereby the latter agreed to produce the crushed rock necessary for the performance of the road job, by setting up his portable rock crushing plant at a specified county pit near the location of the job, and by delivering the rock to the Berndt trucks at the bunkers there located. This agreement was never reduced to writing; and the defendant Berndt testified that he gave no notice to either the County or the Surety Company of any sub-contract or sub-letting, and that he did not obtain permission to do so.

"During the progress of his work in the crushing of said rock, the defendant Turner purchased from the plaintiff a quantity of gasoline, oils and greases of a total value of $1129.49. Turner admits that he owes the plaintiff that sum of money . . ."

Standard Specifications, p. 26, § 8.06, entitled "Sub-letting or Assigning the Contract," provides in part as follows:

"Roadside production of materials is construed to be the production of crushed stone, gravel and/or other material with portable or semiportable crushing, screening or wash-

ing plants established or reopened in the vicinity of the work for the purpose of supplying materials to be incorporated into the work on a designated project or projects *and in all cases, unless performed by the contractor, shall be considered as subcontracting.*" (Italics ours.)

The section also contains the following provision:

"All subcontractors shall be considered the agent of the contractor and the latter shall be responsible for all work and material furnished and any indebtedness incurred by such agent."

It is also provided in this section as follows:

"No portion of the contract shall be sublet, assigned or otherwise disposed of except with the written consent of the director of highways [county road engineer]. Requests for permission to sublet, assign or otherwise dispose of any portion of the contract shall be in writing and accompanied by the consent of the surety and by a showing that the organization which will perform the work is particularly experienced and equipped for such work."

It appears without dispute that Mr. Turner owned a rock crushing plant, which in June of 1946 was located at Moses Lake, Washington; that, upon learning about the Berndt contract, he contacted appellant Berndt for the purpose of obtaining the crushed rock work for the job. The price per yard for the different classes of material was agreed to, as shown by letter of June 25, 1946, written by Mr. Turner to appellant Berndt. Thereafter, Turner moved his rock crushing plant to a gravel pit in Yakima county, northeast of Sunnyside, belonging to the county. The county made no charge for the stone taken from its pit.

It seems to us there can be no question but that, under the standard specifications relative to roadside production of material, which were made a part of the contract between Berndt and Yakima county, Turner became a subcontractor and also the agent of the contractor, Berndt.

It is contended by appellants that respondent is not entitled to recover against the main contractor and the bonding company because it did not give the ten days notice re-

quired by Rem. Rev. Stat., § 1159-1 [P.P.C. § 180-43], which provides in part:

"Every person, firm or corporation furnishing materials, supplies or provisions to be used in the construction, performance, carrying on, prosecution or doing of any work for the state, or any county, city, town, district, municipality or other public body, shall, not later than ten days after the date of the first delivery of such materials, supplies or provisions to any subcontractor or agent of any person, firm or corporation having a subcontract for the construction, performance, carrying on, prosecution or doing of such work, deliver or mail to the contractor a notice in writing stating in substance and effect that such person, firm or corporation has commenced to deliver materials, supplies or provisions for use thereon . . ."

We do not think this contention is tenable, under the facts in this case and the law applicable thereto. It is admitted that appellant Berndt gave no notice to the county engineer or the bonding company of the subletting of the contract to Turner. There is no question but what Berndt had the right to sublet any part of the contract, provided he conformed with the provisions of § 8.06 of the standard specifications, but he did not conform with such specifications, and therefore, in our opinion, waived the right to the notice required by § 1159-1, *supra,* to be given. See *Cascade Constr. Co. v. Snohomish County,* 105 Wash. 484, 490, 178 Pac. 470; *Maeder Steel Products Co. v. Brewster,* 154 Wash. 120, 122, 281 Pac. 14.

We have examined the three cases hereinbefore referred to as cited by appellants to sustain their contention that Turner was a mere materialman and that respondent, in furnishing supplies to Turner, was not entitled to recover in this action. Without attempting to distinguish in detail the cited cases, it may be said, in regard to the case of *Baker v. Yakima Valley Canal Co., supra,* that Rem. & Bal. Code, § 1129 (now Rem. Rev. Stat., § 1129 [P.P.C. § 180-1]), which was a private lien statute, was involved. It does not appear that in that case there were any specifications such as those contained in the standard specifications involved in this case, under which one furnishing stone, gravel, or other

material, as did Turner, was considered as a subcontractor.

It may also be said that in neither of the other cases cited did the contract contain any provision such as we have in the contract before us and the standard specifications which are made a part thereof.

It is not contended that, in order to participate in the retained percentage by virtue of Rem. Rev. Stat., § 10320 [P.P.C. § 180-49], it was necessary to give the ten days notice required by § 1159-1, *supra*. See *Maryland Cas. Co. v. Tacoma*, 199 Wash. 384, 92 P. (2d) 203.

We conclude, therefore, that under the facts and the law applicable thereto, Paul Turner was a subcontractor and agent of appellant Berndt, and that as such agent he purchased from respondent the gasoline, oil, and other supplies, heretofore mentioned.

For the reasons assigned, we are of the opinion that the judgment entered in this case should be, and is, affirmed.

BEALS, STEINERT, MALLERY, and HILL, JJ., concur.