[No. 27860. Department One. October 30, 1941.]

MARYLAND CASUALTY COMPANY, *Respondent*, v. THE CITY OF SEATTLE *et al., Defendants,* LONDON GUARANTEE & ACCIDENT COMPANY, LTD., *Appellant.*[1]

[1]Reported in 118 P. (2d) 416.

*Harold A. Seering,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondent.

ROBINSON, C. J.—Arcorace & Coluccio, contractors, entered into a written contract with the city of Seattle to construct a sewer. The instrument read, in part, as follows:

"The contractor shall not commence work under this contract until he has obtained all insurance required under this paragraph and such insurance has been approved by the owner and the state director, nor shall the contractor allow any sub-contractor to commence work on his sub-contract until all similar insurance required of the sub-contractor has been so obtained and approved.

"(b) Property Damage Insurance

"The contractor shall take out and maintain during the life of this contract, such Public Liability and Property Damage Insurance as shall protect him and any sub-contractor performing work covered by this contract, from claims for damages for personal injuries including wrongful death, as well as from claims for property damages, which may arise from operations under this contract, whether such operations be by himself or by any sub-contractor or anyone directly or indirectly employed by either of them. The amount of such insurance shall be as follows:

"Public Liability Insurance in an amount not less than $10,000.00 for injuries, including wrongful death, to any one person, and, subject to the same limit for each person, in an amount not less than $20,000.00 on account of one accident, and Property Damage Insurance in an amount not less than $1,000.00."

The performance bond of the contractors was executed by Maryland Casualty Company as surety. The bond contained the following provisions:

"This bond is executed in pursuance of Sections 1159 and 1161 of Remington & Ballinger's Annotated Codes and Statutes of the State of Washington, as amended by Chapter 28, Laws of 1915, and is subject to all the provisions thereof, and of the Charter of the City of Seattle, so far as the same is not in conflict with the laws of this state, and is entered into with the said City for the use and benefit of said City and also for the use and benefit of all laborers, mechanics, subcontractors, materialmen, and all persons who shall supply such person or persons or sub-contractors with provisions or supplies for the carrying on of the work covered by the contract entered into on the 13th day of December, 1935, between the above named, the undersigned and bounden principal, and the said City of Seattle, for the construction of Henderson Street Trunk Sewer, Units 3, 4, 6 and 7, as ordered by Ordinance 64831, approved July 3, 1934.

"And the conditions of the obligations are such that, *if the above named principal Arcorace & Coluccio shall faithfully perform said contract which is hereby expressly referred to and made a part hereof*, and shall pay all laborers, mechanics, sub-contractors and materialmen, and all persons who shall supply such person or persons, or sub-contractors, with provisions and supplies for the carrying on of such work, and comply with all the requirements of the laws of the State of Washington and the Charter and Ordinances of the City of Seattle, and amendments thereto not in conflict with the laws of this state; provided, however, that the conditions of this obligation shall not apply to any money loaned or advanced to any such contractor or sub-contractor, or other person, in the performance of any such work, whether specifically provided for in the contract or not, then this obligation to be null and void; otherwise to remain in full force and effect." (Italics ours.)

Upon comparison, it will be found that the conditions of the bond are in almost the identical language used in the statute.

The contractors procured their public liability and property damage policies from the London Guarantee & Accident Co., Ltd. They failed to pay certain premiums. The guarantee and accident company filed a claim with the city against the bond of the contractor and the retained percentage or reserve fund in the hands of the city, and, in this suit, which was brought by the contractors' surety to determine the amount of its liability and settle all claims, filed a cross-complaint seeking recovery from the contractors' surety, and also from the reserve fund, of the amount of the unpaid insurance premiums. The trial court held that there could be no recovery from the contractors' surety or the reserve fund, and this appeal followed.

On appeal, it is not contended that the reserve fund is liable, but that the respondent bonding company is liable, upon either of two theories; namely: (1) That, since the bond incorporated the contract by reference and guaranteed its faithful performance, and the contract required the contractors to "maintain" the insurance during the life of the contract, the surety on the bond is 'obligated to pay the insurance premiums, the contractors having failed to do so; and (2) that the insurance is a "supply," within the meaning of the word "supplies," as used in the statute and bond.

We think the first contention unsound, for this reason: The obligation to pay the insurance premiums was an obligation of the contract between the contractors and the insurance company, not of the construction contract the performance of which the statutory bond was given to secure. The obligation of that contract, with regard to insurance, was that the contractors should "maintain" public liability and property damage insurance for the protection of the city during the life of the contract, and, if it was so maintained—and, as we understand the record, the city had the full

protection of the policies during the life of the contract —that obligation was performed, wholly irrespective of whether or not the contractors paid the premiums therefor.

Nonpayment of the premiums by the contractors was a breach of their contract with the insurance company, a private contract as distinguished from the public works contract which the respondent bonding company gave the statutory bond to secure. No default by the principals as to performance of the public works contract having been shown, there can be no recovery against their surety.

The second contention raises the question as to whether the insurance is a supply, in the sense of the term "supplies for carrying on the work." Generally speaking—and very generally—the statutory phrase, just quoted, includes those things which, in a definite sense, enter into the work and form a part of the completed structure, although they may include things necessarily entirely consumed in the performance of the work. It does not include contractor's equipment, for that may or may not be consumed. *United States Rubber Co. v. American Bonding Co.*, 86 Wash. 180, 149 Pac. 706, L. R. A. 1915F, 951. It does not include money loaned to the contractor and used by him in performing the work, *American Savings Bank & Trust Co. v. National Surety Co.*, 104 Wash. 663, 177 Pac. 646; nor medical and hospital services furnished by a clinic under an agreement with the contractor, *Western Clinic & Hospital Ass'n v. Gabriel Const. Co.*, 168 Wash. 411, 12 P. (2d) 417.

And, although we have held that a more liberal rule is followed in allowing recovery on a bond of a contractor doing public work than in actions to foreclose ordinary liens, *National Grocery Co. v. Maryland Cas. Co.*, 148 Wash. 387, 393, 269 Pac. 4, 65 A. L. R. 256, all

of our cases dealing with the subject of claims under public works bonds proceed upon the theory that the purpose of the statute requiring such bonds is to protect those persons who would be protected by the lien laws, if the work was private in character.

In the recent case of *Terry v. U. S. Fidelity & Guaranty Co.,* 196 Wash. 206, 82 P. (2d) 532, 119 A. L. R. 1276, we quoted the following from *American Sav. Bank & Trust Co. v. National Surety Co., supra:*

"It should be borne in mind that the legislature had in view here public works and buildings and was providing security and protection only to those who, if the work were private in its nature, would be protected by the lien laws. In other words, the bond given under this statute and in the statutory language becomes a substitute for the right of lien which would exist were the work private. And, therefore, looking to analogous lien cases for a rule as to who may claim under the bond, we find the prevailing doctrine to be that one who loans money is entitled to no lien therefor . . . "Hence it logically follows that one who loans money to a contractor on public work cannot claim under the statutory bond."

Employing the same process of reasoning, we think it follows that one who furnishes liability insurance to a contractor on public work cannot claim under the statutory bond.

The case of *Anderson v. U. S. Fidelity & Guaranty Co.,* 44 N. M. 483, 104 P. (2d) 906, has been decided since the briefs were prepared in this case, and, in fact, since the oral argument was heard. It is in point as to both contentions made by the appellant. Under similar facts, it held that the word "maintain" means "keep in force," rather than "bear the expense of," and that, therefore, if the insurance is, in fact, kept in force during the life of the contract, the obligation to maintain insurance is performed. It further ruled that in-

surance policies could not be held to be included in the word "supplies."

[See, also, *New Amsterdam Cas. Co. v. Detroit Fidelity & Surety Co.,* 187 Ark. 97, 58 S. W. (2d) 418; *Lumbermen's Mutual Cas. Co. v. Underhill Const. Co.,* 149 Kan. 684, 88 P. (2d) 1107, in both of which cases the contract required the contractor to "maintain" liability insurance during the progress of the work.]

Appellant relies largely upon *Merchants Mutual Cas. Co. v. U. S. Fidelity & Guaranty Co.,* 253 App. Div. 151, 2 N. Y. S. (2d) 370; *McFarland v. Rogers,* 134 Me. 228, 184 Atl. 391, and *Building Cont. L. M. L. Ins. Co. v. Southern Surety Co.,* 185 Wis. 83, 200 N. W. 770, in each of which the contract secured required the contractor to maintain liability insurance and in each of which a recovery for premiums was had as against the surety upon the contractor's bond. As we shall show by quotations from the bonds involved in each of these cases, they are readily distinguishable from the case at bar by reason of the broader undertaking of each of the respective sureties. The italics used in each of the following quotations are ours.

In the New York case, the surety undertook to guarantee the payment of:

" . . . all lawful claims of subcontractors, materialmen *or other third persons* arising out of or in connection with said contract or the work performed thereunder. . . ."

In the Maine case, the surety undertook to guarantee the payment of

". . . all bills for labor, equipment, and all material except pipe, *and for all other things contracted for* or used by him [the contractor] in connection with the work contemplated by said contract. . . ."

In the Wisconsin case, the surety guaranteed that: ". . . the principal shall faithfully perform the contract on his part, *and satisfy all claims and demands incurred for the same.*"

The judgment appealed from is affirmed.

MAIN, BLAKE, MILLARD, and SIMPSON, JJ., concur.

[1]Reported in 118 P. (2d) 435.