[No. 5682-8-II.  Division Two.  November 21, 1983.]

PORTLAND ELECTRIC & PLUMBING COMPANY, INC., *Appellant,* v. JOHN D. DOBLER, ET AL, *Respondents.*

*Dale J. Galvin* and *Donald Foss, Jr.*, for appellant.

*Steven L. Larson,* for respondents.

PETRIE, J.—Plaintiff, Portland Electric & Plumbing Company, Inc. (PEPCO), supplier of electrical material to the construction site of an apartment complex owned by defendants John and Rebecca Dobler, appeals a judgment foreclosing a materialman's lien on the complex. Defendants (Dobler) cross–appeal from the same judgment. Both parties challenge the amount of the lien imposed by the court. PEPCO asserts that the lien should have been imposed for the value of all materials delivered to the site. Dobler asserts that the lien should have covered only those materials actually incorporated into the complex; not those

which replenished the materialman's existing inventory of materials which, in turn, were actually used in the project. We reverse and grant the total lien to PEPCO and permit foreclosure for all materials delivered to the jobsite for use in the project.

Dobler owned certain real estate upon which he was constructing the Katherine Court Apartment complex. He hired Sipes & Sons, Inc. (Sipes) as his general contractor on the project. Sipes, in turn, contracted with United Electrical, Inc. (United) for the installation of electrical materials in the apartments. United purchased its electrical supplies from plaintiff PEPCO, with which it had an ongoing account.

Prior to receiving any orders for the Katherine Court project, PEPCO implemented the following policy with regard to sales to United: (1) all sales to United on its open account were to be cash on delivery; (2) credit sales were permitted for construction projects where (a) a job account form was completed prior to the first delivery, (b) materials were actually delivered to a lienable jobsite, and (c) an arrangement had been made with the general contractor, before first delivery of the material, to issue a joint check for materials sold. PEPCO felt that this new policy was necessary due to United's poor credit status. As of December 1978, United owed PEPCO $55,310, of which $32,789.64 was due past 90 days.

In attempted compliance with this policy, on December 15 United obtained from Sipes a letter in which Sipes agreed to issue two checks: One payable to PEPCO for moneys due on materials, the other payable to United for the balance. On December 27, United completed a job account form which indicated the address to which material for the Katherine Court project should be delivered. Between December 27, 1978, and February 28, 1979, United ordered, and PEPCO delivered to that jobsite, $21,793.76 worth of material. Sipes was aware that the major portion of these goods was not kept on the site as there was not a secure place to store them. But neither PEPCO, Dobler,

nor Sipes had any actual knowledge until mid–April 1979 that some of this material had been permanently diverted from the site.

By January 11, 1979, Sipes had paid United $20,500 on its $28,250 contract; however, the only payment received by PEPCO at this or any other time was a $3,000 joint check issued by Sipes in March, payable to both PEPCO and United, and which United turned over entirely to PEPCO.

PEPCO sent a pre–lien notice to Dobler on February 8, 1979, filed its Notice of Claim on May 25, and complied with all the other procedural requirements of the lien statute.

We first note that neither party assigned error to the trial court's findings of fact. Accordingly, the facts stated therein are established facts in the case, *Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.*, 96 Wn.2d 806, 638 P.2d 1220 (1982), and our review is limited to determining whether the trial court correctly applied the law to the unchallenged facts. *Roy v. Goerz*, 26 Wn. App. 807, 614 P.2d 1308 (1980).

In the present case, the trial court granted a materialman's lien only for the value of the materials which were actually incorporated into the buildings plus the value of materials delivered to the extent that they replenished United's existing stock actually used in the construction of the apartments. Under the trial court's unchallenged facts, we hold the trial court erred by not granting PEPCO a lien for the full amount of materials delivered to the project.

While in some jurisdictions, in order to sustain a materialman's lien, the materials must *actually* be used in the building or improvement for which they were furnished, it is well settled in Washington that the statute, RCW 60.04.010, grants a lien to any person "furnishing material . . . to be used in the construction . . ." of a building. When, as here, all the procedural requirements for perfecting the lien have been complied with, the lien embraces material which either actually has been incorporated into and become a part of the building or has been delivered

upon the site for incorporation into such building. *Hyak Lumber & Millwork, Inc. v. Cissell,* 40 Wn.2d 484, 244 P.2d 253 (1952);[1] *Standard Lumber Co. v. Fields,* 29 Wn.2d 327, 187 P.2d 283, 175 A.L.R. 309 (1947); *Westinghouse Elec. Supply Co. v. Hawthorne,* 21 Wn.2d 74, 150 P.2d 55 (1944); *Thompson v. O'Leary,* 176 Wash. 606, 30 P.2d 661, 33 P.2d 90 (1934); *Holly–Mason Hardware Co. v. National Sur. Co.,* 107 Wash. 74, 180 P. 901 (1919); *W.P. Fuller & Co. v. Ryan,* 44 Wash. 385, 87 P. 485 (1906). The trial court here found that material valued at $21,793.76 had been delivered to the jobsite pursuant to the job account form for the Katherine Court project. Therefore, we hold that, under lien foreclosure law in Washington, a lien was created for the value of such material, subject only to being defeated by proof of an instance of bad faith. *Holly–Mason Hardware Co. v. National Sur. Co., supra; Westinghouse Elec. Supply Co. v. Hawthorne, supra.* The trial court found neither party had acted in bad faith.

Furthermore, we find no merit to respondent's argument that the supplier (materialman) has a duty constantly to inspect the building to ensure that the material he supplied is actually used in the building. It is the owner's responsibility to assure that delivered materials are incorporated into the project. Generally, he does so through his general contractor who is the owner's statutory agent for that purpose.

---

[1]In light of the foregoing cases, we are unable to accept Dobler's argument that Washington requires actual incorporation of the material into the building, a contention he claims is supported by *Kellison v. Godfrey,* 154 Wash. 219, 281 P. 733 (1929). However, in *Kellison,* the materials were delivered to an *already completed* house and so were incapable of being incorporated into the building or furnished for use in the construction of the building within the meaning of the statute. We are unwilling to infer from *Kellison* the meaning attributed to it by respondent.

We note further the incomplete and somewhat misleading statement of the law found in Washington State Bar Ass'n, *Real Property Deskbook, Mechanics' and Materialmen's Liens* § 48.3 (1979), regarding the establishment of materialman's liens. It incorrectly characterizes Washington's lien foreclosure law as requiring proof of actual incorporation and cites *Kellison v. Godfrey, supra,* as the definitive case.

We reverse, granting a lien for $21,793.76, the value of all materials furnished to the site by PEPCO, minus the $3,000 paid. We remand to the trial court with direction to re–exercise its discretion regarding PEPCO's request for reasonable attorney's fees at trial in view of our opinion herein and to award reasonable attorney's fees on appeal.

WORSWICK, A.C.J., and REED, J., concur.

Reconsideration denied December 23, 1983.