[No. 41034-2-I.   Division One.   March 29, 1999.]

MANNINGTON CARPETS, INC., *Respondent,* v. THOMAS R. HAZELRIGG III, ET AL., *Defendants,* G.W. CONSTRUCTION GROUP, INC., ET AL., *Respondents,* FRONTIER BANK, ET AL., *Appellants.*

*Thomas F. Peterson* of *Betts, Patterson & Mines, P.S.*; *David R. Riley* of *Weinstein, Fischer, Riley, Erickson & Wolf*; and *Roger W. Jones, Jr.*, for appellants.

*Jay H. Zulauf* of *Mundt MacGregor, L.L.P.*, for respondents.

Cox, J. — The priority of a materialmen's lien against real property is established as of the date of delivery of the material to that property. Here, Mannington Carpets, Inc., shipped carpet "F.O.B.[1] Mannington's mill" from the state of Georgia to Renton, Washington, in March 1996. In May 1996, a carrier delivered the carpet to the subject property, a commercial building located in Renton. The month before, on April 18, 1996, lenders Frontier Bank and John and Carol Radovich properly recorded against the property their respective deeds of trust. Because the trial court erred by ruling that Mannington's materialmen's lien was prior to the liens of the two deeds of trust, we reverse that part of the court's order granting summary judgment.

This is a lien foreclosure action against a commercial building that was the subject of construction activity in early 1996. G.W. Construction Group, Inc., was the general contractor for the construction and coordinated the work of a number of subcontractors on the project. Mannington was not one of those subcontractors, having contracted directly with the owner of the building, Thomas Hazelrigg, III. At the time of oral argument of this appeal, the priority of G.W. Construction's lien and the liens of its various subcontractors in relation to the deeds of trust against the property was at issue. After oral argument, Frontier Bank and the Radoviches settled their claims against G.W. Construction, Acoustical Supplies, and Boyer Electric. The only remaining issue before us is the priority of Mannington's lien in relation to the two deeds of trust.

Mannington agreed to supply to the subject property roughly 4,600 square yards of carpet. It shipped the material from its mill in Calhoun, Georgia, in two batches. The first was sent on March 29, 1996; the second on April 12, 1996. Both batches were shipped "F.O.B. Mannington's mill." On April 18, 1996, Frontier recorded its deed of trust in the face amount of $2,700,000 against the subject property. At the same time, the Radoviches recorded their deed

---

[1]"Free on board." RCW 62A.2-319(1).

of trust in the face amount of $835,000 against the same property. On May 28, 1996, a carrier delivered the Mannington carpet to the building. Mannington did not receive payment for the carpet and recorded its claim of lien in July 1996. Thereafter, it commenced this lien foreclosure action.

The trial court orally granted Mannington's motion for summary judgment and thereafter entered its order that established the Mannington lien as a first and paramount lien against the building. The court denied the motion for reconsideration of Frontier and the Radoviches, and they appeal. As we have noted, the sole issue before us concerns the priority of the Mannington lien in relation to the deeds of trust of the two lenders.

## I. Continuance

Frontier and the Radoviches contend the trial court abused its discretion when it denied their motion for a continuance. We hold that there was no such abuse.

■ A trial court may order a continuance of a motion for summary judgment to provide the nonmoving party additional time to obtain affidavits, take depositions, or otherwise conduct discovery.[2] We review a denial of a request for a continuance under CR 56(f) for an abuse of discretion.[3] Under this standard, we must determine whether discretion is "exercised on untenable grounds, or for untenable reasons."[4]

■ When the affidavits of the party opposing a summary judgment motion show reasons why the party cannot present facts justifying its opposition, the trial court has a duty to give that party a reasonable opportunity to complete the

[2]CR 56(f).

[3]*Turner v. Kohler,* 54 Wn. App. 688, 693, 775 P.2d 474 (1989).

[4]*State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

record before ruling on the case.[5] But the trial court may deny a motion for a continuance when:

> (1) the moving party does not offer a good reason for the delay in obtaining the evidence; (2) the moving party does not state what evidence would be established through the additional discovery; or (3) the evidence sought will not raise a genuine issue of fact.[6]

The Radoviches and Frontier claim that they were entitled to a continuance under CR 56(f) because they retained present counsel just four days before the summary judgment hearing and because they had as yet been unable to depose Hazelrigg.

■ ■ We have recognized that under certain circumstances where there is a substitution of counsel, it is an abuse of discretion to deny a motion for a continuance.[7] And here, it is undisputed that counsel for Frontier and the Radoviches had only days to prepare a response to Mannington's motion for summary judgment. But counsel had several weeks between the oral grant of summary judgment and entry of the order on the motion to file affidavits or otherwise complete the record. Yet, despite their right to do so,[8] they failed to either depose Hazelrigg or to at least show why it had not been possible to do so. They also failed to state what material evidence would be established through the additional discovery.

In short, the Radoviches and Frontier might have had the right to a continuance given their late substitution of counsel. However, they had the opportunity to complete or at least supplement their record before the final order granting the motion was entered. And because it appears from the record that the trial court considered what was

---

[5]*Cofer v. Pierce County*, 8 Wn. App. 258, 262-63, 505 P.2d 476 (1973).

[6]*Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990) (citing *Turner*, 54 Wn. App. at 693).

[7]*Coggle*, 56 Wn. App. at 508-09.

[8]*See Cofer*, 8 Wn. App. at 261 (holding that "[u]ntil a formal order granting or denying the motion for summary judgment is entered, a party may file affidavits to assist the court in determining the existence of an issue of material fact").

submitted before the hearing at which the order was presented for entry, the court did not abuse its discretion in denying the motion for a continuance.

## II. Materialmen's Lien Priority

Frontier and the Radoviches argue that Mannington's lien for carpet did not attach to the subject property until after the April 18, 1996 recording of their respective deeds of trust. Thus, the materialmen's lien is subordinate to those of their two deeds of trust. We agree.

We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[9] All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party.[10] We review questions of law de novo.[11]

The dispositive facts concerning Mannington's lien for carpet are not in dispute. Thus, we are faced solely with the question of whether Mannington was entitled to judgment as a matter of law.

The priority of the materialmen's lien before us is governed by RCW 60.04.061.[12] This statute, enacted in 1991, states:

The claim of lien created by [the mechanics' and material-

---

[9]CR 56(c); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

[10]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[11]*Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

[12]The current statute is based on former RCW 60.04.050, which provided:

The liens created by [the mechanics' and materialmen's statutes] are preferred to any lien, mortgage or other incumbrance which may attach subsequently to the time of the commencement of the performance of the labor, the obligation to pay contributions to any type of employee benefit plan, the furnishing of the materials, or the supplying of the equipment for which the right of lien is given by this chapter, and are also preferred to any lien, mortgage or other incumbrance which may have attached previously to that time, and which was not filed or recorded so as to create constructive notice of the same prior to that time, and of which the lien claimant had no notice.

men's statutes] shall be prior to any lien, mortgage, deed of trust, or other encumbrance which attached to the land after or was unrecorded *at the time of* commencement of labor or professional services or *first delivery of materials* or equipment by the lien claimant.[13]

The narrow question before us is how to properly construe the italicized portion of the above statute.

Mannington argues that the phrase "first delivery of materials" is the first date on which it shipped the carpet, "F.O.B. Mannington's mill," from its mill in Georgia. That date was March 29, 1996.

Mannington supports its argument in two ways. First, it cites a dictionary definition of "delivery" as "the physical and legal transfer of a shipment from consignor to carrier," or, "the act of putting property into the legal possession of another whether involving the actual transfer . . . or being constructively effected . . . ."[14] Second, it advances the novel argument that RCW 60.04.061 must be read to confer priority of the materialmen's lien in the realty as of the time Mannington delivered the goods to the carrier under the sale term "F.O.B. Mannington's mill." This latter argument is based on the theory that, under the UCC and the sale term "F.O.B.," the seller's obligation ends[15] and the title and risk of loss of the goods pass from seller to buyer at the time and place of shipment.[16] Neither argument is persuasive.

First, the argument based on Article 2 of the UNIFORM

___

[13](Emphasis added.)

[14]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 597 (1976).

[15]RCW 62A.2-319(1) states:

"Unless otherwise agreed the term F.O.B. (which means "free on board") at a named place, even though used only in connection with the stated price, is a delivery term under which

"(a) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article (RCW 62A.2-504) and bear the expense and risk of putting them into the possession of the carrier[.]"

[16]RCW 62A.2-401(2)(a) states that "if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment[.]"

COMMERCIAL CODE (U.C.C.) confuses the question of establishing rights in goods between buyer and seller with the establishment of lien priorities in real property under RCW 60.04.061. Mannington cites *Johnson's Wholesale Plumbing, Inc. v. Holloway*[17] for the proposition that the shipment of goods from Georgia establishes delivery for purposes of a materialmen's lien in Washington. But that case is inapposite. There, the issue concerned the notice requirement of the materialmen's lien statute.[18] That section provided in part that written notice of an intent to claim a materialmen's lien would "cover" all materials "furnished or leased" in the 60 days preceding that notice.[19] Because the record did not reflect the date of shipment, the *Holloway* court could not determine whether the materials in question had been "furnished" within the 60 days preceding the notice.

While *Holloway* is instructive as to what "furnished" means in the context of the notice requirement, it is not helpful to our determination of whether shipment of goods from Georgia constitutes delivery in Washington for purposes of materialmen's lien priority.

Second, adopting Mannington's position would be inconsistent with established policies and case authority in this jurisdiction that a materialmen's lien in realty can arise only when the materials are associated with that property and when notice is afforded to others that a lien may be claimed.[20] Reliance on the shipment of goods from Georgia as the point of establishing lien priority in Washington realty conflicts with both of the above principles.

Third, we note that even Article 9 of the U.C.C., which governs the priority of security interests in personal property, does not apply to this materialmen's lien. With limited

---

[17] 17 Wn. App. 449, 563 P.2d 1294, *review denied*, 89 Wn.2d 1009 (1977).

[18] Former RCW 60.04.020, *repealed by* LAWS OF 1991, ch. 281, § 31, effective Apr. 1, 1992.

[19] Former RCW 60.04.020.

[20] RCW 60.04.061; *Standard Lumber Co. v. Fields*, 29 Wn.2d 327, 339-40, 187 P.2d 283, 175 A.L.R. 309 (1947).

exceptions,[21] Article 9 specifically excludes from its scope statutory liens such as the materialmen's liens provided for by RCW 60.04.[22] We believe it would be anomalous to use Article 2 to establish the priority of a statutory lien in realty when Article 9 expressly disclaims such application in personalty.

■ We also reject Mannington's citation to a dictionary definition of "delivery" as being helpful in this case. We first note that the definition provided by Mannington is incomplete. The definition in its entirety is "the physical and legal transfer of a shipment from consignor to carrier, *between carriers, and from transport agency to consignee.*"[23] When read in full, this definition encompasses the physical and legal transfer of goods to the final purchaser or "consignee." Here, that would include the transfer of the carpet from the carrier to the subject property. Moreover, we conclude that a much more compelling argument is provided by the line of cases construing the predecessor statute that established lien priority for materialmen's liens. The Legislature was presumably aware of those cases when it amended the lien statute in 1991, and there is neither argument here nor any indication generally that the amendments were intended to modify the law.[24]

■ One such case under the predecessor statute is *Hut-*

---

[21]RCW 62A.9-310(1) provides:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest only if the lien is statutory and the statute expressly provides for such priority."

[22]RCW 62A.9-102(2). That materialmen's liens are statutory liens is clear from the statute itself—RCW 60.04.061 refers to the "claim of lien created by this chapter"—and from case law. *Northlake Concrete Prods., Inc. v. Wylie*, 34 Wn. App. 810, 813, 663 P.2d 1380 (1983) (stating that the rights arising as part of a materialmen's lien are statutory); *Pinebrook Homeowners Ass'n v. Owen*, 48 Wn. App. 424, 428, 739 P.2d 110 (stating that "mechanics', laborer's, and materialmen's liens are creatures of statute"), *review denied*, 109 Wn.2d 1009 (1987).

[23](Emphasis added.)

[24]*Price v. Kitsap Transit*, 125 Wn.2d 456, 463, 886 P.2d 556 (1994).

*tig Bros. Mfg. Co. v. Denny Hotel Co.*[25] There, a supplier recorded a claim of lien when the materials had been shipped but had not yet arrived at the building site. The trial court ruled that this lien was invalid on the ground that it had been recorded prematurely.[26] On appeal, our Supreme Court affirmed that ruling, agreeing that the right to a materialmen's lien does not arise where the materials have been shipped but not yet delivered.[27]

Mannington incorrectly asserts that the *Huttig* court treated the date of shipment as the relevant date for purposes of enforcing a lien. The court found the shipping date relevant to its finding as to the lien's existence, not as to when the lien attached. The Denny Hotel Company had argued that because the materials arrived after the contractor had abandoned the contract, those materials could not be said to have been furnished pursuant to the contract. And because there can be no lien for materials not furnished under the contract, the Denny Hotel Company asserted no lien existed. The court rejected this argument, finding that because the materials had been shipped before the contract was abandoned, they were furnished pursuant to the contract, and the right to the lien existed. However, the lien did not attach until the materials were actually delivered to the site.

*Standard Lumber Co. v. Fields*[28] is another case illustrating the principles that govern here. There, Standard Lumber Company argued that because Fields, the materialman, did not personally deliver the materials to the subject property, he did not meet the requirements for a materialmen's lien. The court held that it is "immaterial" who delivered the materials and that the determinative question is whether the materials "were actually delivered upon

---

[25] 6 Wash.122, 32 P. 1073 (1893).

[26] *Huttig*, 6 Wash. at 125-26.

[27] *Huttig*, 6 Wash. at 130.

[28] 29 Wn.2d 327, 187 P.2d 283, 175 A.L.R. 309 (1947).

the ground for use" in the subject property.[29] Thus, as used by our Supreme Court, "deliver" encompasses the actual physical delivery of goods to their destination, not just shipment as Mannington suggests.

In addition to the above statutory arguments, Mannington also contends that its lien should have priority because its carpet enhanced the subject property. To support this argument, Mannington relies on the following language from *Berger v. Baist*:[30] " 'He whose property is enhanced in value by the labor and toil of others should be made to respond in some way by payment and full satisfaction for what he has secured. To accomplish this result is the intent of the lien law.' "

It is undisputed that Mannington provided a benefit to the building for which it has not been paid. But whether the carpet enhanced the property does not answer the priority question before us. We are not asked to determine whether the lien is valid or whether the material provided value to the building. Rather, the issue before us is the relative priority of the lien in relation to the two deeds of trust. We therefore reject this argument.

Finally, the policies served by the materialmen's lien statute support our reading of "delivery" as it is used in RCW 60.04.061. The purpose of allowing a lien to attach to secure the price of building materials is that those materials have some special connection to the property being encumbered.[31] Because there can be no lien "where [the] material [is] neither used in the building nor taken to the premises,"[32] it follows that at least one of those conditions must occur before the lien will attach.

Here, Mannington first delivered its carpet to the premises on May 28, 1996. Then and only then did the lien

---

[29]*Standard Lumber Co.*, 29 Wn.2d at 344.

[30]165 Wash. 590, 600, 6 P.2d 412, 89 A.L.R. 164 (1931) (quoting *Emery v. Hertig*, 60 Minn. 54, 61 N.W. 830 (1895)).

[31]*W.P. Fuller & Co. v. Ryan*, 44 Wash. 385, 386-87, 87 P. 485 (1906).

[32]*Id.*

attach. Because the liens of the deeds of trust of the Radoviches and Frontier attached to the property on April 18, 1996, they are senior to the Mannington lien. Consequently, we must reverse that portion of the trial court's order that states that Mannington's lien attached on March 29, 1996, and is prior to the deeds of trust of Frontier and the Radoviches.

The Radoviches and Frontier also assign error to the trial court's denial of the motion for reconsideration. But because they fail to present argument and authority in support of this assignment of error, we need not consider it.[33]

### III. Attorney Fees

RAP 18.1 authorizes the award of attorney fees on appeal if permitted by applicable law. Here, RCW 60.04-.181(3)[34] permits the prevailing party in a lien priority action to recover attorney fees.

Frontier and the Radoviches seek fees on appeal. Because they prevail here over Mannington, they are entitled to such fees, subject to compliance with RAP 18.1.

We reverse, in part, the summary judgment order.

AGID, A.C.J., and BECKER, J., concur.

Review denied at 139 Wn.2d 1003 (1999).

---

[33]RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley,* 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[34]"The court may allow the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action . . . attorneys' fees and necessary expenses incurred by the attorney in the superior court, court of appeals, supreme court, or arbitration, as the court or arbitrator deems reasonable. . . ."