[No. 46151-6-I.   Division One.   July 30, 2001.]

NATIONAL CONCRETE CUTTING, INC., *Respondent*, v. NORTHWEST GM CONTRACTORS, INC., *Defendant*, LUMPKIN, INC., ET AL., *Appellants*.

*Scott E. Feir* and *George W. Akers, Jr.* (of *Montgomery, Purdue, Blankinship & Austin, P.L.L.C.*), for appellants.

*Evan E. Inslee* and *Dan S. Lossing* (of *Inslee, Best, Doezie & Ryder, P.S.*), for respondent.

GROSSE, J. — For purposes of public or private materialmen's liens, materials are defined as those things supplied that either actually have been incorporated and become a part of a building, or have been delivered to the building site for incorporation into a building. Here, National Concrete Cutting, Inc. (National Concrete) provided specialized concrete cutting services akin to labor, not material. The decision of the trial court is affirmed.

## FACTS

Lumpkin, Inc. (Lumpkin) was the general contractor for the Seattle School District's project for remodeling and rehabilitating a portion of Lincoln High School. Lumpkin contracted with Northwest GM Contractors, Inc. (Northwest GM) for the mechanical work on the project. In turn, Northwest GM hired National Concrete to provide concrete cutting, sawing, and coring. The essential nature of the agreement was for National Concrete to provide its services at an hourly rate. United Pacific Insurance Company of Pennsylvania (United Pacific), through Reliance, Inc., sup-

plied Lumpkin with the performance and payment bond for the project.

Northwest GM failed to pay National Concrete all of the amount due for its work. Specifically, National Concrete did not get paid for the months of October through December of 1997. On February 20, 1998, National Concrete filed a notice of claim of lien against the project bond and retainage. On August 31, 1998, National Concrete filed an action to recover amounts owed to it on the project. National Concrete sought to recover from Northwest GM, Lumpkin, and United Pacific. Cross motions for summary judgment were filed.

In its motion for summary judgment, Lumpkin claimed National Concrete's charge should be broken down into its various components, such as equipment, materials, net profit, overhead, labor, and supplies. Lumpkin asserted that National Concrete should be considered a supplier of materials required to file a preclaim notice under RCW 39.08.065. That provision states:

**Notice to contractor condition to suit on bond when supplies are furnished to subcontractor.** Every person, firm or corporation furnishing materials, supplies or provisions to be used in the construction, performance, carrying on, prosecution or doing of any work for the state, or any county, city, town, district, municipality or other public body, shall, not later than ten days after the date of the first delivery of such materials, supplies or provisions to any subcontractor or agent of any person, firm or corporation having a subcontract for the construction, performance, carrying on, prosecution or doing of such work, deliver or mail to the contractor a notice in writing stating in substance and effect that such person, firm or corporation has commenced to deliver materials, supplies or provisions for use thereon, with the name of the subcontractor or agent ordering or to whom the same is furnished and that such contractor and his bond will be held for the payment of the same, and no suit or action shall be maintained in any court against the contractor or his bond to recover for such material, supplies or provisions or any part thereof unless the provisions of this section have been complied with.

In its motion, National Concrete argued it was not required to file a preclaim notice for materials because the claim was one for labor, not materials or supplies. National Concrete bills its work on an hourly basis for the time its employees spend at the jobsite. The hourly rate includes charges for the employee's time, overhead and profit, tools, and any incidental and consumable materials that are necessary for the employee to complete the work. National Concrete asserts that the only materials or equipment it supplied to the project were purely incidental to the on-site labor and work of its employees.

The trial court agreed and determined that National Concrete did not furnish materials or supplies and was not required to provide preclaim notice under the contractor's bond statute. The court granted summary judgment to National Concrete. Lumpkin's motion for reconsideration was denied. Lumpkin appeals to this court.[1]

## DISCUSSION

The usual standard of review for summary judgments applies.[2] RCW 39.08.065 pertains to providers of materials, supplies, or provisions. The parties agree the statute does not apply to a subcontractor whose claim on public works projects consists merely of labor. But, Lumpkin claims

---

[1] To minimize costs, the parties entered into a stipulated judgment agreeing on the amount Lumpkin owed to National Concrete if the decision were affirmed. The judgment amount is $51,805.75 plus interest at 12 percent from February 2, 2000. The parties agreed that Lumpkin's right to appeal would not be prejudiced nor would Lumpkin be deemed to have waived any arguments or theories on appeal. National Concrete also retained the right to proceed on other theories should the decision of the trial court be reversed.

[2] Summary judgment orders are reviewed de novo by appellate courts. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 63-64, 1 P.3d 1167 (2000). In reviewing the case the court observes the well-known principle that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 790, 16 P.3d 574 (2001). "Such a motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one conclusion." *Van Noy*, 142 Wn.2d at 790 (citing *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998)).

implements were used in National Concrete's operation which should be considered supplies. Lumpkin contends the use of National Concrete's specialized equipment and cutting supplies was not labor, which Lumpkin defines using the definition contained in the mechanics' and materialmen's liens statute as an "exertion of the powers of body or mind performed at the site for compensation."[3] We disagree. What National Concrete provided was in essence labor services, even as defined by Lumpkin.

Courts have repeatedly defined materials as including such articles which either actually have been incorporated into and become a part of the building or have been delivered on the site for incorporation into the finished structure.[4] National Concrete did not supply materials to the project. The notice statute clearly relates only to those who supply or deliver materials, supplies, or provisions intended to be used on the job which enter into and form a part of the finished project. Any use of equipment or supplies by National Concrete was purely incidental to the labor of concrete drilling, sawing, and coring.

The purpose of the preclaim notice statute is to protect the prime contractor so it will not pay twice for the same materials.[5] That is not what happened in this case. National Concrete is completely unlike the materialman who drops off his goods unknown to the general contractor. Rather, it provides specialized labor services to the project.

Lumpkin relies on the case of *Ledingham v. City of Blaine*[6] which held that a subcontractor supplying a man

---

[3] *See* RCW 60.04.011(7).

[4] *Portland Elec. & Plumbing Co. v. Dobler*, 36 Wn. App. 114, 117-18, 672 P.2d 103 (1983); *Norris Indus. v. Halverson-Mason Constructors*, 12 Wn. App. 393, 396, 529 P.2d 1113 (1974) (citing *W. Clinic & Hosp. Ass'n v. Gabriel Constr. Co.*, 168 Wash. 411, 414, 12 P.2d 417 (1932)).

[5] *Austin v. C.V. Wilder & Co.*, 65 Wn.2d 456, 458, 397 P.2d 1019 (1965) (citing *Cascade Lumber & Shingle Co. v. Wright*, 99 Wash. 421, 426, 169 P. 833 (1918)) (primary contractor is generally unaware of the identity of the material suppliers who drop materials at the jobsite and leave).

[6] *Ledingham v. City of Blaine*, 105 Wash. 253, 177 P. 783 (1919). In a more modern context, we doubt anyone could seriously contend that the contractor for

and a team of horses on municipal work furnishes "labor" to the extent of the man's wages and "supplies" in the use of the team of horses. But in *Ledingham*, the contract specifically separated the wages and the use of the team by calling for $2.50 a day as the wages for the driver, and $4.00 a day for the use of the team. That contract was severable by its terms and by its performance. The same is not true here. Here there was an hourly charge of $105 for the concrete cutting, sawing, and coring service. The contract did not call for or delineate severable situations.

The only notice requirement imposed here is found in RCW 39.08.030, which speaks to the conditions of the bond required by RCW 39.08.010. There is no dispute that National Concrete provided proper and timely written notice under this statute, thereby perfecting its claim against the bond.

The decision of the trial court is affirmed.

BECKER, A.C.J., and BAKER, J., concur.

Review denied at 145 Wn.2d 1027 (2002).

---

hauling fill to the site provides labor in the form of the driver but supplies in the form of the truck. Moreover, the decision in *Ledingham* seems inconsistent with later cases focusing on "incorporation" as the criteria.