51 P.3d 108 (2002)
112 Wash.App. 697
BETTER FINANCIAL SOLUTIONS, INC., a Washington Corporation, Appellant,
v.
TRANSTECH ELECTRIC, INC.; Kent School District # 415; United Pacific Insurance Co.; and Contractors Bonding & Insurance Company, Respondents.
Breland Enterprises, Inc., Defendant.
Nos. 48782-5-I, 48217-3-I.
Court of Appeals of Washington, Division 1.
July 29, 2002.
As Amended August 16, 2002.
*109 Howard M. Goodfriend, Brendan P. Finucane, Edwards, Sieh, Smith & Goodfriend, Seattle, WA, Charles M. Greenberg, Edmonds, WA, for Appellant.
Fred S. Finkelstein, Bellevue, WA, for Respondent Contractor's Bonding & Ins. Co.
Robert C. Kelley, Bellevue, WA, for Respondents Transtech Elec. and United Pac. Ins. Co.
Richard O. Prentke, Perkins Coie, Seattle, WA, for Respondent Kent School Dist.

PUBLISHED IN PART OPINION
SCHINDLER, J.
Better Financial Solutions, Inc. ("BFS") appeals the summary judgment dismissal of its claims against Transtech Electric, Inc., a general contractor, ("Transtech"); United Pacific Insurance Co., Transtech's surety ("United Pacific"); and Contractors Bonding & Insurance Co., the surety of the subcontractor Breland Enterprises, Inc. ("CBIC"). The issue presented is whether BFS's role in the Kent School District ("the School District") construction project entitled it to pursue *110 claims against the contractor's and subcontractor's performance and payment bonds furnished pursuant to RCW 39.08.010 and under the public works retainage statute, RCW 60.28.011.[1] The trial court ruled as a matter of law that BFS was not a proper claimant under the bonds or under the public works retainage statute. We agree with the trial court and affirm.

FACTS
Transtech was the general contractor on a public works project for the Kent School District. As required by RCW 39.08.010, it obtained a performance and payment bond from United Pacific. Transtech subcontracted with Breland Enterprises, Inc. to perform the concrete work on the project. Breland obtained a performance and payment bond from CBIC. Pursuant to the public works retainage statute, RCW 60.28.011(1), the School District retained approximately $18,300 from its contract payments to Transtech.
Breland contracted with BFS and entered into an "Agreement to Supply Temporary Labor."[2] The agreement provides in part:
Whereas Client [Breland] desires to obtain temporary personnel (EMPLOYEES) to augment the CLIENT'S work force, and SUPPLIER [BFS] agrees to supply personnel to work under the CLIENT'S supervision and control ... the parties hereby agree as follows....[[3]]
Breland was solely responsible for the work on the project. The contract between Breland and BFS made BFS responsible for paying wages, taxes, and insurance and made Breland solely responsible for directing the employees' on-site activities. Breland retained full control over the means and methods of work and procedures to be used on the job site. The contract also required Breland to provide on-site supervisory personnel and to maintain the job site in compliance with Occupational Safety and Health Act ("OSHA") and Washington Industrial Safety and Health Act ("WISHA") rules as well as other applicable regulations. The contract gave Breland the exclusive right to terminate a worker at any time.
All of the persons who worked under the contract between BFS and Breland had previously been Breland employees, and BFS was not involved in hiring any of the people who worked on the concrete project under Breland's subcontract with Transtech. While the contract between BFS and Breland was in effect, Breland's employees filled out BFS's time cards and their paychecks were drawn on BFS's payroll account. BFS paid tax payments to the State as the employer of these workers. BFS wrote the workers' paychecks, withheld and remitted their employment taxes and unemployment insurance, and paid industrial insurance on behalf of the workers. In exchange for these services, BFS charged a 20 percent return on the funds it paid.
BFS did not, however, go to the job site and did not supervise the work, nor did it supply tools, equipment, or materials for the job. Jeff Breland, the owner of Breland Enterprises, testified in a deposition that his understanding of his company's arrangement with BFS was that BFS would "front the money for our payroll, take care of our payroll,"[4] and that as a condition, Mr. Breland had to sign his employees over to BFS. Mr. Breland viewed the arrangement as that of a loan.
In a letter to the Department of Labor and Industries, Michael McMahan, General Manager of BFS, described BFS as follows:
We are a combination of financial services and a specialized temporary employment service. We temporarily place our client's permanent employees on our payroll. We provide this service to aid the client financially while they are working on a construction contract and awaiting progress *111 payments. This helps the client with his cash flow and money management.[[5]]
BFS characterizes itself as a "supplier" in the Agreement with Breland and characterized itself as a "supplier of labor" in the application for contractor registration it filed with the Department as a "specialty contractor."[6]
When Breland's work on the Transtech project was completed, Breland owed BFS $84,411. BFS brought an action against Breland, and the trial court entered judgment against Breland for that amount. Breland did not appeal that judgment. BFS then filed a claim against United Pacific's bond, the School District's retention fund, and CBIC's bond for the $84,411 Breland owed BFS. It filed a motion for summary judgment against all parties except CBIC. The trial court denied BFS's motion. CBIC then filed a motion for summary judgment in which United Pacific and Transtech joined. They argued that BFS was not a proper claimant under the contractor's bond or the retainage statute or the terms of CBIC's non-statutory bond. The trial court granted this motion as to all claims except BFS's unjust enrichment claim. BFS, Transtech, and United Pacific stipulated to the dismissal of the unjust enrichment claim with prejudice. BFS appeals.

DISCUSSION
Standard of Review
We review summary judgments de novo.[7] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] We view the evidence in the light most favorable to the nonmoving party and will affirm the grant of summary judgment "only if reasonable persons could reach but one conclusion."[9]
Construction of Lien Statutes
BFS's right to obtain payment under the contractor and subcontractor bonds, RCW 39.08.010, and the retainage statute, RCW 60.28.011, depends on whether BFS qualifies as a claimant under these public works lien statutes. "Lien statutes are in derogation of the common law and should be strictly construed."[10] "Statutory benefits are extended only to those who clearly come within the statute's terms."[11] Once it is determined, however, that a party comes within the statute's terms, "the statute is liberally construed to provide security for all parties intended to be protected by it."[12]
RCW 39.08.010
The bond requirement statute for contractors on public works projects provides in part:
Whenever any board, council, commission, trustees, or body acting for the state or any county or municipality or any public body shall contract with any person or corporation to do any work for the state, county, or municipality, or other public body, city, town, or district, such board, council, commission, trustees, or body shall require the person or persons with whom such contract is made to make, execute, and deliver to such board, council, commission, trustees, or body a good and sufficient bond, with a surety company as surety, conditioned that such person or persons shall faithfully perform all the provisions of such contract and pay all laborers, mechanics, and subcontractors and materialmen, and all persons who supply such person or persons, or subcontractors, with provisions and supplies for *112 the carrying on of such work, which bond in cases of cities and towns shall be filed with the clerk or comptroller thereof, and any person or persons performing such services or furnishing material to any subcontractor shall have the same right under the provisions of such bond as if such work, services or material was furnished to the original subcontractor[.][13]
The statute specifically does not apply to money loaned or advanced to a contractor, subcontractor, or any other person on a public works project.[14]
Under the statute, those persons and entities entitled to recover under Transtech's bond are: laborers, mechanics, subcontractors, materialmen, persons who supply such entities with provisions and supplies for carrying on the work, and any person performing such services or furnishing material to a subcontractor. As stated, in order to recover under Transtech's bond, BFS must clearly come within the class protected by the statute.[15] BFS contends it is a proper claimant because it supplied labor to Breland.[16]
In determining whether BFS clearly comes within the protected class, we view the facts and reasonable inferences in the light most favorable to BFS.[17] The evidence in the record, so viewed, shows that BFS is not within the protected class. The statute does not specifically include suppliers of labor, as BFS has characterized itself. Nor can suppliers of labor be included within the persons specifically identified in the statute as being within the protected class. That is, suppliers of labor do not supply provisions, supplies, or material.[18] Suppliers of labor are not mechanics or materialmen.[19] Suppliers of labor *113 are not subcontractors.[20] Suppliers of labor are not, and cannot logically be, laborers as well. Laborers are the individuals who actually perform the work at the job site.[21]
Moreover, even ignoring BFS's self-characterization as a supplier of labor, the facts viewed in the light most favorable to BFS do not support the conclusion that BFS falls within a class protected by RCW 39.08.010. BFS did not go to the job site, did not provide materials or supplies that entered into the work or formed a part of the completed structure, did not supply any of the tools or equipment used in the performance of Breland's concrete subcontract, did not take responsibility for implementing or enforcing safety procedures at the job site, was not involved in hiring, firing, or supervising any of the workers who worked on the concrete subcontract, and had no role concerning how the workers performed their work. In fact, Breland's contract with BFS specifically provides that Breland would retain sole responsibility for firing workers and supervising and directing their work and that Breland was required to maintain federal and state safety standards at the job site. The record shows that Breland transferred its employees to BFS to allow BFS to take over the administration of the payroll for those workers. BFS's functions consisted primarily of writing pay checks, withholding and remitting the necessary taxes, and paying unemployment insurance and industrial insurance.
Under these facts and the reasonable inferences drawn therefrom, viewed in the light most favorable to BFS, we conclude that BFS is, as it characterizes itself, a supplier of labor and, as such, is not a proper claimant under the general contractor's bond. The trial court correctly entered summary judgment in favor of Transtech and its surety, United Pacific.
Our holding that BFS is not a proper claimant under Transtech's bond is also consistent with the purpose of Washington's lien statutes which "is to benefit those persons within the protected class."[22] That is why, to be entitled to claim under a bond furnished under RCW 39.08.010, a person must clearly come within the class of persons protected. This requirement serves to ensure the availability of funds to those who were intended to be entitled to it, for example laborers and those who furnish supplies to a public works project.[23] We will not and cannot expand the class of proper claimants beyond that which the Legislature has established.
The cases on which BFS relies do not compel a different result. In National Concrete Cutting, Inc. v. Northwest GM Contractors,[24] the issue presented was whether National Concrete was a supplier of materials to a public works project and therefore required to file a pre-claim notice under RCW 39.08.065 or whether it was a supplier of labor and therefore not required to file such notice. The issue raised here, namely, whether a particular entity was a proper claimant under a bond furnished pursuant to RCW 39.08.010, was not raised or discussed in National Concrete. The issues presented in National Concrete are not only different *114 from the ones raised here but also arose under a different statute.[25]
Bishop v. T. Ryan Const. Co.[26] is likewise distinguishable. In that case, Bishop contracted with a subcontractor to haul sand, gravel, and cement used in the construction of county roads under a public contract. Bishop was allowed to recover for his hauling services under the bond the general contractor furnished pursuant to the predecessor to RCW 39.08.010. BFS argues that, under Bishop, it is a proper claimant under the bond. We disagree. Bishop, by hauling materials used in the construction of the road, performed actual physical labor at or near the job site. BFS, by contrast, did not provide work or services at the job site and, in fact, never even went to the job site. The "labor" Bishop supplied was his own expenditure of energy that directly contributed to the completion of the construction project. BFS did not similarly supply labor directly to the job site. It performed a very different function with respect to the public works project than Bishop did.
The same can be said of the persons deemed proper claimants under a bond furnished by a contractor on a public works project in National Surety Co. v. Bratnober Lumber Co.[27] There, the court affirmed judgments in favor of a company that furnished coal for fuel for the contractor's steam shovel and two companies that furnished teams with drivers for work necessary in the construction of the improvement, one of which also furnished hay and grain to feed the horses the contractor used. As in Bishop, and unlike the present case, these entities furnished supplies and physical labor directly to the construction project.
BFS also relies on Ledingham v. City of Blaine,[28] in which the court held that a subcontractor that supplied a man and a team of horses on municipal work furnished "labor" to the extent of the man's wages and "supplies" in the use of the team of horses. The court in National Concrete did not follow Ledingham and questioned the analysis and current validity of this case: "In a more modern context, we doubt anyone could seriously contend that the contractor for hauling fill to the site provides labor in the form of the driver but supplies in the form of the truck. Moreover, the decision in Ledingham seems inconsistent with later cases focusing on `incorporation' as the criteria."[29]
Both parties cite California cases in support of their arguments. BFS argues that Contractors Labor Pool, Inc. v. Westway Contractors, Inc.[30] is directly on point; the respondents argue that Primo Team, Inc. v. Blake Constr. Co.[31] is directly on point. Both cases involve claimants under payment bonds issued in connection with public works projects, and in both cases, the courts discussed persons entitled to pursue claims under the applicable lien statute. Because California's statute differs from Washington's in that it is more expansive, we find that neither case is helpful and both are distinguishable.
California's lien statute under which Primo Team and Contractors Labor Pool were decided identified the entities entitled to pursue liens for services or materials provided to a work of improvement as follows:
"Mechanics, materialmen, contractors, subcontractors, lessors of equipment, artisans, architects, registered engineers, licensed land surveyors, machinists, builders, teamsters, and draymen, and all persons and laborers of every class performing labor upon or bestowing skill or *115 other necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams, or power contributing to a work of improvement."[[32]]
California case law has established that, under this statute, included among "persons and laborers ... performing labor upon or bestowing skill or other necessary services on" a work of improvement are not only persons who actually physically perform labor at the job site, but also persons and entities that furnish laborers for the project.[33] Washington's statute does not contain a similar provision. Nor does Washington's statute contain a provision that can reasonably be interpreted to include among those entitled to the protection of the statute persons or entities that furnish labor to the job site. We do not rely on these California cases because California's statute differs from and is more expansive than Washington's.
RCW 60.28.011
Under the public works retainage statute, a public body must reserve a retainage not to exceed five percent of the funds earned by a contractor under a public improvement contract as a trust fund for the protection and payment of the claims of any person arising under the statute and the state with respect to taxes due from the contractor.[34] The statute provides: "Every person performing labor or furnishing supplies toward the completion of a public improvement contract shall have a lien upon moneys reserved by a public body under the provisions of a public improvement contract."[35] The statute defines "person" as:
a person or persons, mechanic, subcontractor, or materialperson who performs labor or provides materials for a public improvement contract, and any other person who supplies the person with provisions or supplies for the carrying on of a public improvement contract.[[36]]
BFS argues that it is entitled to funds withheld pursuant to this statute. We disagree.
BFS does not clearly fall within the language of the statute's definition of "person." That is, BFS is not an entity that "performs labor" or "provides materials" or "supplies the person with provisions or supplies." Because it does not clearly fall within the class of persons protected under the statute, it is not a proper claimant under the bond.[37]
CBIC's bond
Under the bond CBIC issued to Breland, a "claimant" is defined as:
One having both a) a direct contract with the Principal or with a direct subcontractor of the principal for labor, material, or both, used in the performance of the Subcontract and b) an enforceable lien on the property improved under the Subcontract for labor, material, or both, used in the performance of the Subcontract.[[38]]
Under the bond, a claimant must meet both elements set forth in the definition. BFS did not have a contract with Transtech and, as discussed, BFS is not a proper claimant under the general contractor's bond or the public works retainage statute. It is therefore likewise not a proper claimant under the bond Breland furnished for which CBIC was surety.
BFS argues that, in determining its entitlement to recover under CBIC's bond, we should disregard the second element of the definition of "claimant" because no provider of labor or materials can have a lien against public property. It argues that this boilerplate language was intended to apply only in situations not involving a public works project. Because there is no way to *116 give effect to the entire clause, BFS argues, the court should disregard the second element entirely and broaden the definition of "claimant" to include only the first element. This is contrary to the rule for the construction of contracts that prevents courts from disregarding contract language the parties used and favors an interpretation of a contract which gives effect to all of its provisions over one which renders some of the language meaningless or ineffective.[39] It is evident that CBIC intended that a claimant under the bond have an enforceable lien. In the case of a public works project, the enforceable lien is under the retainage statute, not against the property. BFS did not have an enforceable lien against the funds the School District retained, so it is not a proper claimant under CBIC's bond.[40]
We affirm the summary judgment entered in favor of Transtech, United Pacific, and CBIC. The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
KENNEDY, J., and COX, A.C.J., concur.
NOTES
[1] The School District is a nominal defendant who is a party to this lawsuit because of the contract payments retained under RCW 60.28.011.
[2] CP 109.
[3] CP 109.
[4] CP 60.
[5] CP 73.
[6] CP 320.
[7] Van Noy v. State Farm Mut. Auto. Ins. Co., 142 Wash.2d 784, 790, 16 P.3d 574 (2001).
[8] CR 56(c).
[9] Van Noy, 142 Wash.2d at 790, 16 P.3d 574.
[10] Airefco, Inc. v. Yelm Community Schools, 52 Wash.App. 230, 233, 758 P.2d 996 (1988).
[11] TPST Soil Recyclers of Washington, Inc. v. W.F. Anderson Const., Inc., 91 Wash.App. 297, 300, 957 P.2d 265 (1998).
[12] Id., 91 Wash.App. at 300 n. 2, 957 P.2d 265.
[13] (Emphasis added.) RCW 39.08.010.
[14] "PROVIDED, HOWEVER, That the provisions of RCW 39.08.010 through 39.08.030 shall not apply to any money loaned or advanced to any such contractor, subcontractor, or other person in the performance of any such work". RCW 39.08.010. The Legislature added this clause in 1915 and, at the same time, deleted from the statute the clause requiring that a contractor's bond be conditioned to pay "`all just debts, dues and demands incurred in the performance of such work....'" Maryland Cas. Co. v. Philbrick & Nicholson, Inc., 147 Wash. 277, 286, 266 P. 142 (1928) (quoting former Rem. & Bal.Code § 1159).
[15] TPST Soil Recyclers of Washington, Inc., 91 Wash.App. at 300, 957 P.2d 265.
[16] On appeal, BFS argues that, pursuant to RCW 39.08.010, it is entitled to recover under Transtech's bond because it is a laborer, a supplier of labor, or a subcontractor. In its motions and memoranda filed below, however, BFS argued its entitlement to recovery under the bond only on the theory that it was a supplier of labor, not a subcontractor or a laborer. Accordingly, it is precluded from arguing on appeal that it is a subcontractor or laborer. See Nelson v. McGoldrick, 127 Wash.2d 124, 140, 896 P.2d 1258 (1995) (when reviewing a summary judgment, an appellate court will not consider issues not raised in the trial court and not considered by the trial court on the motion for summary judgment). Further, we reject BFS's argument that, for purposes of lien statutes, there is no distinction among suppliers of labor, laborers, and subcontractors. To read RCW 39.08.010 the way BFS suggests, and to thereby eliminate the distinctions between certain of the enumerated persons and entities, would be to render some language of the statute superfluous. This is contrary to the settled rule of statutory construction that requires a court to give effect to all the words in a statute and to render no portion of a statute meaningless or superfluous. See e.g., Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999); Marina Cove Condominium Owners Assoc. v. Isabella Estates, 109 Wash.App. 230, 241, 34 P.3d 870 (2001).
[17] See Mannington Carpets, Inc. v. Hazelrigg, 94 Wash.App. 899, 904, 973 P.2d 1103 (1999).
[18] See e.g., National Concrete Cutting, Inc. v. Northwest GM Contractors, 107 Wash.App. 657, 661, 27 P.3d 1239 (2001) (the term "materials" includes "such articles which either actually have been incorporated into and become a part of the building or have been delivered on the site for incorporation into the finished structure"); Maryland Cas. Co. v. Seattle, 11 Wash.2d 69, 73, 118 P.2d 416 (1941) (supplies for carrying on the work: include "those things which, in a definite sense, enter into the work and form a part of the completed structure, although they may include things necessarily entirely consumed in the performance of the work"); Willett v. Davis, 30 Wash.2d 622, 636, 193 P.2d 321 (1948) (holding that the cost of equipment rental and the cost of the fuel for the equipment were "provisions and supplies").
[19] See Austin v. C.V. Wilder & Co., Inc., 65 Wash.2d 456, 457, 397 P.2d 1019 (1965) (the materialman was the company that delivered blasting and other supplies to the subcontractor on a public works project).
[20] See Farwest Steel Corp. v. Mainline Metal Works, Inc., 48 Wash.App. 719, 723-26, 741 P.2d 58 (1987) (identifying two tests for determining whether a party is a subcontractor: whether the party performs or takes from the prime contractor a specific part of the labor or material requirements of the original contract and has a substantial and important relationship with the prime contractor and whether the party performed any on-site work).
[21] See e.g., National Concrete Cutting, 107 Wash.App. at 660-61, 27 P.3d 1239 (holding that concrete cutting, sawing, and coring services constituted labor, and thus implicitly holding that those who perform the cutting, sawing, and coring are laborers).
[22] Keller Supply Co., Inc. v. Lydig Construction Co., Inc., 57 Wash.App. 594, 600, 789 P.2d 788 (1990); Thompson v. Peninsula School Dist., 77 Wash.App. 500, 505, 892 P.2d 760 (1995). See also Mannington Carpets, 94 Wash.App. at 909, 973 P.2d 1103 ("The purpose of allowing a [materialman's] lien to attach to secure the price of building materials is that those materials have some special connection to the property being encumbered.").
[23] See Farwest Steel Corp., 48 Wash.App. at 725, 741 P.2d 58 (noting that the purpose of Washington's bond statute parallels that of the Miller Act, 40 U.S.C. § 270b).
[24] 107 Wash.App. 657, 27 P.3d 1239 (2001).
[25] BFS cites this case for the proposition that a company providing labor to a subcontractor is a proper claimant under RCW 39.08.010. This is a mischaracterization of the holding of the case.
[26] 106 Wash. 254, 180 P. 126 (1919).
[27] 67 Wash. 601, 122 P. 337 (1912).
[28] 105 Wash. 253, 177 P. 783 (1919).
[29] National Concrete Cutting, 107 Wash.App. at 661-62 n. 6, 27 P.3d 1239.
[30] 53 Cal.App.4th 152, 61 Cal.Rptr.2d 715 (1997).
[31] 3 Cal.App.4th 801, 4 Cal.Rptr.2d 701 (1992).
[32] Cal. Civ.Code § 3110 (quoted in Primo Team, 4 Cal.Rptr.2d at 704).
[33] Primo Team, 4 Cal.Rptr.2d at 704; Contractors Labor Pool, 61 Cal.Rptr.2d at 720.
[34] RCW 60.28.011(1).
[35] RCW 60.28.011(2).
[36] RCW 60.28.011(12)(b).
[37] See TPST Soil Recyclers, 91 Wash.App. at 300, 957 P.2d 265.
[38] CP 52.
[39] See Wagner v. Wagner, 95 Wash.2d 94, 101, 621 P.2d 1279 (1980).
[40] See also Byrne v. Ackerlund, 108 Wash.2d 445, 454, 739 P.2d 1138 (1987) ("Where one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the latter more rational construction must prevail.").